United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1010

| | | |
|---|---|---|
| Vivian Martyszenko, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Safeway, Inc., a Delaware Corporation; | * | |
| Dennis Davis, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: June 13, 1997
Filed: July 15, 1997

_____

Before MURPHY, LAY and NORRIS,[1] Circuit Judges.

_____

LAY, Circuit Judge.

This is an action brought under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (FMLA). Vivian Martyszenko was working as a cashier at Safeway grocery store in Ogallala, Nebraska, when she received a call indicating that police believed her two children may have been sexually molested. On the basis of this

_____

[1]The Honorable William A. Norris, Circuit Judge for the Ninth Circuit, sitting by designation.

information, Dennis Davis, Martyszenko's supervisor at Safeway, permitted Martyszenko two weeks' vacation leave to care for her children.

Dr. Randall Sullivan, a psychiatrist, examined Martyszenko's seven-year-old son, Kyle, on August 4, 1995, and found he had no behavior problems.[2] Dr. Sullivan found no evidence of distractibility, psychosis or hallucinations. He concluded that "it would be premature to make a diagnosis of sexual abuse." Dr. Sullivan suggested Kyle should be supervised, but did not believe he needed to be observed continuously.

After the August 4 appointment, Martyszenko returned to Safeway and spoke with her supervisor. She informed Davis that the visit with Dr. Sullivan was inconclusive and that Kyle was scheduled for additional appointments at about two-week intervals. Davis offered to schedule Martyszenko around Kyle's appointments. Martyszenko then left Safeway permanently. She did not report to work as scheduled and she did not contact Davis.

Dr. Sullivan evaluated Kyle on August 14. He reported:

[Kyle] is not expressing any issues that he has been sexually abused or had any sexual contact. The family reports that his behavior at home is essentially normal with no behavior problems. He had no behavior problems at school last year.

Dr. Sullivan observed that his final interview with Kyle was "essentially unremarkable."[3]

---

[2]Notwithstanding the original report that both of Martyszenko's children were thought to have been molested, authorities resolved that Martyszenko's daughter had not been molested.

[3]Dr. Sullivan concluded:

In October 1995, Safeway twice wrote Martyszenko and advised her that she could return to her position at Safeway with full reinstatement of benefits and no loss in seniority. In January 1996, Safeway provided Martyszenko a check in the amount she would have received as compensation had she remained at work. Martyszenko rejected the offer to return but cashed the check.

In her suit in district court, Martyszenko asserts that Safeway fired her after she requested time off from work and that Safeway failed to inform her of leave available under the FMLA. The district court granted Safeway's summary judgment motion on the basis that Kyle did not have a "serious health condition," which is necessary to trigger the FMLA. Martyszenko appeals.

## DISCUSSION

Martyszenko argues that the district court granted summary judgment premised upon its erroneous interpretation of the FMLA as requiring some incapacity to prove a "serious health condition." We affirm.

### *Family and Medical Leave Act*

In relevant part, the FMLA entitles an eligible employee to twelve workweeks' leave per year to care for a child with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). This leave generally may be unpaid. 29 U.S.C. § 2612(c). An employer violates the FMLA if it denies the employee leave or reinstatement following the leave. See 29 U.S.C. §§ 2612(a), 2614(a), 2615(a)(1).

---

I do not see any real clear evidence for sexual abuse. . . . I think from a diagnostic point of view, I would be hard pressed to say he clearly is a victim of sexual abuse or that he even has a diagnosable psychiatric problem at this point.

A "serious health condition" is any physical or mental condition that involves inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). This case does not concern inpatient care. The FMLA does not define what medical attention constitutes "continuing treatment" by a health care provider, nor does it further define "serious health condition." However, Congress directed the Secretary of Labor to promulgate regulations to effectuate the Act. 29 U.S.C. § 2654.

Under the governing regulations, to constitute a serious health condition premised upon continuing treatment by a health care provider, the condition at a minimum will include either: a period of incapacity of more than three consecutive days together with subsequent multiple treatments or related periods of incapacity; a period of incapacity due to pregnancy or for prenatal care; a period of incapacity or treatment for the incapacity due to a chronic serious health condition; a permanent or long-term period of incapacity due to ineffective treatment; or a period of absence to receive or recover from multiple treatments by a health care provider for restorative surgery or for a condition likely to result in incapacity if no treatment is received. 29 C.F.R. § 825.114(a).[4]

### *"Serious Health Condition"*

The district court interpreted these regulations as requiring incapacity. It is difficult to fault this assessment. In construing regulations of the Secretary, we were recently reminded that "[where] Congress has not 'directly spoken to the precise question at issue,' we must sustain the Secretary's approach so long as it is 'based on a permissible construction of the statute.'" Auer v. Robbins, 117 S. Ct. 905, 909 (1997) (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).

---

[4] "Treatment" includes, inter alia, "examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b).

Martyszenko argues that incapacity is not required to trigger the FMLA. She contends that even if incapacity is required, Kyle's three consultations with Dr. Sullivan qualify as a period of incapacity. We find no error in the district court's interpretation. In addition to the standards set forth in the regulations, the legislative history of the FMLA supports the district court's construction. The Act was designed to permit a parent to tend to her child where the child is "unable to participate in school or in his or her regular daily activities." S. Rep. No. 103-3, at 28 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 30; H.R. Rep. No. 103-8, pt. 1; see also 29 C.F.R. § 825.114(a)(2)(I). The Act was "not intended to cover short-term conditions for which treatment and recovery are very brief." S. Rep. No. 103-3, at 28.

Uniformly, courts applying the FMLA expressly or impliedly have required a showing of incapacity. See Hodgens v. General Dynamics Corp., ___ F. Supp. ___, No. 96-117-T, 1997 WL 236677, at *4 (D.R.I. May 6, 1997) (holding no FMLA breach where employee's "condition did not prevent him from performing his job"); Boyce v. New York City Mission Soc'y, ___ F. Supp. ___, No. 96 CIV. 2480, 1997 WL 232511, at *9 (S.D.N.Y. May 5, 1997) (recognizing the requirement of incapacity; holding plaintiff's shortness of breath and chest pains failed to meet the FMLA standard); Rhoads v. FDIC, 956 F. Supp. 1239, 1255 (D.Md. 1997) (denying employer's summary judgment motion where the plaintiff's "well documented chronic health condition" caused "episodic periods of incapacity"); Kaylor v. Fannin Reg'l Hosp., 946 F. Supp. 988, 997-98 (N.D.Ga. 1996) (finding plaintiff's back injury to be a "serious health condition" because it "incapacitated [him] for three weeks"); George v. Associated Stationers, 932 F. Supp. 1012, 1015-16 (N.D.Ohio 1996) (finding a "serious health condition" where the plaintiff's communicable chicken pox prevented him from working for over three days); Hott v. VDO Yazaki Corp., 922 F. Supp. 1114, 1128 (W.D.Va. 1996) (noting incapacity requirement and granting employer summary judgment where condition would last ten days but where "the plaintiff was able to perform the functions of her position"); Gudenkauf v. Stauffer Communications, Inc., 922 F. Supp. 465, 474-76 (D.Kan. 1996) (holding employer's refusal to grant leave did

not violate the FMLA where the employee failed to prove that her condition "kept her from performing the functions of her job"); Bauer v. Dayton-Walther Corp., 910 F. Supp. 306, 310-11 (E.D.Ky. 1996) (finding no FMLA violation upon no showing of requisite incapacity period); Brannon v. OshKosh B'Gosh, Inc., 897 F. Supp. 1028, 1036-37 (M.D.Tenn. 1995) (holding employee's condition did not require FMLA leave because she was not "'incapacitated' for more than three calendar days," but employee's daughter's fever qualified because it kept her from day care); Seidle v. Provident Mut. Life Ins. Co., 871 F. Supp. 238, 243 (E.D.Pa. 1994) (requiring employee to demonstrate her child underwent "a period of incapacity requiring absence from his day care center for more than three days").

Here, the alleged molestation did not create a mental condition that hindered Kyle's ability to participate in any activity at all. From the outset, Dr. Sullivan did not report any psychological disorder or mental condition and found Kyle to be worry free and undistracted. He did not restrict any of Kyle's daily activities. The record does not establish the existence of any health condition, let alone a "serious health condition" as contemplated by the FMLA.

Although periodic examinations may constitute treatment, by the FMLA's express terms such treatment must be "continuing" to require extended leave. 29 U.S.C. § 2611(11)(B). That is, consistent with the aim of the statute to permit reasonable leave "for eligible medical reasons . . . and for compelling family reasons," 29 U.S.C. § 2601(b)(4) (emphasis added), examinations and evaluations concerning serious health conditions will implicate the FMLA only to the extent their importance, duration and frequency require absence from work.

The record establishes that Dr. Sullivan examined Kyle to determine whether Kyle in fact had been molested, and, if so, whether that molestation created psychological problems. Yet, there was never any report of a serious psychological

condition -- only of an alleged molestation. We therefore hold these examinations did not amount to treatment for a serious health condition.

Safeway accommodated Kyle's first examination immediately by permitting Martyszenko a full two weeks' leave, and offered not to schedule her to work at any time during Kyle's subsequent examinations. While the accusation of molestation led Dr. Sullivan to suggest that Kyle should be supervised, he at no time found any support for the uncorroborated molestation accusation, and in any event did not order Kyle to be observed continuously. We hold that Safeway met its obligation to Martyszenko under the FMLA by releasing her from work for an extended period up through the first examination and by offering to schedule her to work around the two subsequent examinations.

## CONCLUSION

In sum, we hold that Kyle did not have a "serious health condition" under the FMLA. Even assuming Dr. Sullivan's interviews could be deemed examinations to determine the existence of a serious health condition pursuant to 29 C.F.R. § 825.114(b), Safeway met its FMLA-leave obligation by permitting Martyszenko leave initially and by offering to schedule her around any examinations. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-