**Sheila CARTER, Plaintiff,**

v.

**RENTAL UNIFORM SERVICE OF CULPEPER, INC., Christopher Dods, Defendants.**

Civ. A. No. 96–0071–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 16, 1997.

Gail Starling Marshall, Rapidan, VA, Rebecca Claire Guthrie, Richmond, VA, for Plaintiff.

Thomas Marshall Wolf, Karen Lee Starke, Mezzullo & McCandlish, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(13), the court, by Standing Order, referred this employment discrimination action alleging to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court.

On July 16, 1997, the Magistrate Judge filed his Report and Recommendation, which recommends that defendants' February 10, 1997 motion to dismiss be denied as to COUNT I (discriminatory termination under Title VII, 42 U.S.C. § 2000e *et seq.*), COUNT II (retaliatory termination under Title VII), COUNT VI (discriminatory termination under 42 U.S.C. § 1981), VII (retaliatory termination under § 1981), COUNT VIII (discriminatory hiring practices under § 1981), and COUNT IX (racial harassment under § 1981).

The Report and Recommendation further urges that defendants' motion to dismiss be granted as to COUNT III (discriminatory failure to rehire under Title VII), COUNT IV (termination for serious illness in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq.*), COUNT V (racial harassment under Title VII), and COUNT X (Virginia law claim for racially discriminatory discharge).

As to the FMLA charge, the Report and Recommendation finds that Ms. Carter's first amended complaint in COUNT IV did not sufficiently allege willfulness, and, thus, the two-year statute of limitations governed, barring the claim as untimely. Upon plaintiffs filing of her second amended complaint the Report and Recommendation finds that the plaintiff now sufficiently has alleged willfulness on the part of the individual defendant, Mr. Dods, so as to bring plaintiffs claim within the three year statute of limitations, 29 U.S.C. § 2617(c)(2). The Report and Recommendation finds, however, that even the longer limitations period does not avoid the larger deficiency of COUNT IV. On the pleadings as they exist even after the second amendment, plaintiff fails to plead a sufficiently severe medical condition even to apply under the terms of the FMLA. For this reason, the Magistrate Judge urges that COUNT IV be dismissed.

The defendants and the plaintiff filed objections to the Report and Recommendation on July 30, 1997 and August 4, 1997, respectively. Said objections having been timely and appropriately lodged, this court has undertaken a *de novo* review of the case. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir. 1982). After a thorough examination of the parties' objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation itself, this court overrules all objections. The Report and Recommendation, filed July 17, 1997, shall be, and hereby is, adopted for the reasons stated below.

## I. Background

### A. Factual Background

Plaintiff Sheila Carter worked for defendant Rental Uniform Service of Culpeper, Inc. ("RUS") as a seamstress from September 1993 until October 1994, when she was terminated. Defendant Christopher Dods was an executive with RUS from January 1994 to February 1995, and now works for RUS's parent corporation. According to plaintiffs allegations, during plaintiffs tenure at RUS, no blacks held supervisory positions in the company and blacks were subject to racial epithets, of which supervisory personnel were aware. When plaintiff complained of this harassment, she allegedly was told not to cause trouble or she would be fired.

Ms. Carter alleges that in October 1994, RUS instituted a new point system, to be applied retroactively, to deal with absenteeism problems among its workforce. Pursuant to this policy, Ms. Carter was assigned five points for prior absences and was told that one additional point would lead to termination. On October 20, 1994, Ms. Carter became ill during working hours and went to the hospital emergency room, from where she called RUS to inform it that she had been given medication and had been instructed to take two days off from work. Despite this instruction, plaintiff returned to work directly from the hospital and, that same day,

presented her employer with a supporting doctor's note. RUS gave her permission to leave work that day. Ms. Carter then came to work on the next business day which fell during the following week. That week, Ms. Carter was scheduled to take her vacation, but RUS requested that she come to work to make up for the time she had missed, and plaintiff complied. When she arrived at work, plaintiff was told to go home because she had exceeded her maximum allotted points for absenteeism. Subsequently, plaintiff was fired.

Four of the twenty-six other employees in plaintiff's department allegedly also were terminated for absenteeism; all of them are black. Plaintiff alleges that whites with the same number of absences were not fired.

In November 1994, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging racially-motivated discharge. Exhibit A, attached to Defendants' Motion to Dismiss ("I believe I was discriminatorily discharged because of my race, Black, in violation of Title VII. . . ."). Apart from this allegation, plaintiff did not elaborate on any other alleged form of discrimination she suffered.

In March 1995, plaintiff reapplied for a position with RUS. The manager told plaintiff that RUS had considered rehiring her but could not do so based on paperwork it had received from the EEOC. Plaintiff alleges that she was qualified for the position, and similarly-situated white women with like qualifications were rehired.

### B. Procedural Background

Ms. Carter filed the instant action against RUS on September 10, 1996, alleging violations of Title VII, 42 U.S.C. § 2000e et seq. (COUNTS I, II, Ill, and V) [1] and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (COUNT IV).[2] In her complaint, plaintiff indicates that she intends to seek class action certification.

In COUNT I, Ms. Carter alleges that RUS applied the new, retroactive absenteeism policy in a way that discriminated against blacks and that she was terminated as a result of a discriminatory application of that absenteeism policy. In other words, she claims she was fired because she is black. In COUNT II, Ms. Carter alleges that RUS failed to rehire her in retaliation for her decision to file a complaint of racial discrimination against it with the EEOC. In COUNT III, plaintiff alleges that RUS failed to rehire her because of her race. In COUNT IV, Ms. Carter alleges that RUS unlawfully terminated her for an absence resulting from a serious illness that rendered her incapable of performing her job. In COUNT V, plaintiff alleges that she was subjected to racial harassment. Plaintiff's first complaint was never served on RUS.

On December 23, 1996, Ms. Carter filed a first amended complaint, in which she added defendant Christopher Dods, an executive and manager of RUS. Plaintiff served this complaint within one hundred twenty (120) days of the filing of the original complaint. Ms. Carter re-alleged the Title VII and FMLA claims in the amended complaint. Plaintiff modified COUNT IV, however, to name Mr. Dods as a defendant; further, she added an allegation of willfulness on the part of defendants. Ms. Carter also added five counts to the amended complaint: COUNTS VI (discriminatory termination), VII (illegal retaliation), VIII (discriminatory refusal to rehire), and IX (racial harassment) mirror the Title VII claims, only they are brought pursuant to 42 U.S.C. § 198.[3] COUNT X alleges a claim under Virginia law for racially

---

**1.** The liability provision of Title VII provides: "It shall be an unlawful employment practice for an employer . . . "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e–2(a)(1).

**2.** The FMLA grants a twelve week leave period to certain a qualifying employee for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employers are prohibited from interfering with an employee's rights under the FMLA. Id. § 2615.

**3.** Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

discriminatory discharge in violation of the Commonwealth's public policy. Ms. Carter names RUS as a defendant in all counts, but she names Mr. Dods as a defendant only in COUNT IV.

Defendants move to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They argue (1) that plaintiff has failed to exhaust administrative remedies as to COUNTS II, III, and V; (2) that COUNTS VI, VII, VIII, IX and X are barred by the statute of limitations; and (3) that COUNTS I, II, IV, and VI contain insufficient factual allegations.

## II. Burden Applicable to Defendants' Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure "failure to state a claim upon which relief can be granted" provides grounds for dismissal. For purposes of a Fed.R.Civ. P. 12(b)(6) motion, all factual allegations in the plaintiffs complaint must be accepted as true. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217–18 (4th Cir.1994). The plaintiffs complaint ought not be dismissed unless it is apparent that the plaintiff "would not be entitled to relief under any facts which could be proved in support of [his] claim[s]." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure a complaint must be dismissed if there is "lack of jurisdiction over the subject matter." On a Fed.R.Civ.P. 12(b)(1) motion, the court may have to resolve factual disputes to determine whether it has subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).

## III. Sufficiency of Factual Allegations in COUNTS I and VI (Discriminatory Termination) and COUNTS III and VIII (Discriminatory Failure to Rehire)

The tests for racially motivated termination and failure to rehire under Title VII and § 1981 are the same. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989).

Defendants contend that plaintiff has not alleged sufficient facts to establish a discriminatory discharge because she fails to allege that she was replaced by someone outside her protected class (*i.e.*, someone who is not black). Defendants argue that plaintiffs failure to rehire claim is deficient as a matter of law because Ms. Carter fails to allege (1) that after her rejection the position remained open and RUS continued to seek applicants with qualifications equal to those of plaintiff, or (2) that the position was filled by someone outside Ms. Carter's protected class with lesser qualifications.

Defendants' argument is based on the model *prima facie* tests developed in the caselaw dealing with discriminatory terminations and failures to rehire. *See, e.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993) *NAACP*, 902 F.Supp. at 711–12.

Although it is true that the elements missing in Ms. Carter's complaint are generally required to state *a prima facie* case of discriminatory discharge or failure to rehire, these elements are not always essential. The Fourth Circuit has cautioned that courts should not formalistically plough through organizational proof schemes. The various proof schemes should be employed only to filter out clearly meritless claims or to identify early common nondiscriminatory reasons for adverse employment actions. *See Blankenship v. Warren County Sheriffs Dept*, 939 F.Supp. 451, 459 (W.D.Va.1996) (Michael, J.) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir.1985)). But failure to satisfy one element of an organizational framework does not automatically defeat a discrimination claim, particularly at the Rule 12(b)(6) stage. Thus, Ms. Carter has alleged sufficient facts in her complaint to state claims for discriminatory termination (COUNTS I and VI), at least. Plaintiffs discriminatory failure to rehire claims, however, suffer from other shortcomings discussed *infra*.

## IV. Failure to Exhaust Administrative Remedies (COUNTS II, III, and V)

### A. The Legal Standard

Before bringing a Title VII claim, a plaintiff must exhaust administrative remedies; among the prerequisites to suit is the filing of a timely charge of employment discrimination with the EEOC. 42 U.S.C § 2000e(b),(e),(f); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The exhaustion requirement serves the complementary goals of providing employers fair notice of alleged discrimination and of enabling the EEOC to pursue a reconciliation between the disaffected employee and his employer. " [T]he doctrine of exhaustion of administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency were in fact presented to that agency for resolution.' " *Bunch v. Shalala*, 1995 WL 564385, *9 (4th Cir.1995) (per curium) (unpublished) (quoting *Beale v. Blount*, 461 F.2d 1133, 1140 (5th Cir.1972)).

■ "[C]laims and bases of discrimination set forth in a Title VII complaint 'are cognizable as long as they are like or reasonably related to the allegations of the charge and grow out of such allegations.' " *Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 752 (E.D.Va.1991) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges, as surely as would an initial failure to file a timely EEOC charge." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989) (internal quotations and citations omitted).

### B. The Law Applied to the Facts

■ In this case, Ms. Carter only expressly alleged in the EEOC complaint that she was terminated based on race; she did not claim that she was unlawfully retaliated against, that she was unlawfully refused a position upon re-application, or that she was harassed based on her race. Therefore, the questions become whether any of these new allegations in this action could "reasonably be expected to follow" the discriminatory discharge allegation, *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981), and whether the lawsuit's complaint is " 'like or reasonably related to the allegations of the [EEOC] charge and grow out of such allegations.' " *Nicol,* 767 F.Supp. at 752.

As to the retaliation claim (COUNT II), the Fourth Circuit explicitly has held that retaliation is reasonably related to a previous charge of discrimination. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992) ("All other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court. On consideration, we find these rationales persuasive and we adopt this position."). This approach makes intuitive sense because of the special nature of a retaliation claim—there can be little expectation of conciliation with an employer whose response to a charge of discrimination can be to retaliate. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989).

Thus, the court will deny defendants' motion to dismiss COUNT II of plaintiff's complaint for failure to exhaust remedies.

■ Similarly, Ms. Carter did not even hint in her EEOC charge that she was harassed based on race (COUNT V); nor did she amend her EEOC charge to indicate that she reapplied for a job with RUS and was discriminatorily denied a position (COUNT III). Such harassment and discriminatory failure to rehire allegations are not reasonably related to a charge of discriminatory termination. *See, e.g., Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20 (2nd Cir.1985) (failure to rehire claim dismissed because not reasonably within scope of discriminatory termination EEOC charge); *Oxman v. WLS–TV*, 12 F.3d 652, 660 (7th Cir.1993) (holding that discriminatory failure to rehire and termination are not reasonably related); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111–12 (7th Cir.1992) (holding that reference to termination based on race in charge did not reasonably relate to unmentioned racial harassment); and *Nicol,* 767 F.Supp. at 752–54 (holding that charge of

discrimination based on sex and pregnancy do not reasonably relate to allegations of sexual harassment or hostile environment claims).

Ms. Carter's objections to the Magistrate Judge's Report and Recommendation cite a number of cases that hold only, like *Nealon,* 958 F.2d at 590, that a *retaliation* claim, not a *discriminatory failure to rehire* claim, may be raised for the first time in Federal court notwithstanding its absence from the original EEOC complaint.[4] This court declines to borrow the *Nealon* court's and others' holdings from the retaliation context; instead the court will follow the authority, *supra,* that has dealt with the "reasonably related" question in the appropriate context.

Thus, the court will grant defendants' motion to dismiss COUNTS III and V of plaintiff's complaint for failure to exhaust remedies.

## V.  FMLA claims (COUNT IV)

### A.  Statute of Limitations and Specificity as to Willfulness Claim against Mr. Dods

The statute of limitations under the FMLA is ordinarily two years. 29 U.S.C. § 2617(c)(1). For willful conduct, however, the statute of limitations is three years. *Id.* § 2617(c)(2).

Ms. Carter's second amended complaint alleges willful conduct and was filed on May 22, 1997. The willful violation allegedly occurred on October 27, 1994, when plaintiff was terminated. Therefore, the statute of limitations will not have run until October 27, 1997, and plaintiff's claim is timely.

Ms. Carter's second amended complaint alleges, with the necessary specificity, facts which could be proved in support of this aspect of the claim; her allegations are not purely conclusory, as before. Neither defen-

dants' statute of limitations argument nor their argument that the willfulness claim lacks specificity argument is well-taken. There are, however, alternative grounds on which COUNT IV must be dismissed.

### B.  Lack of Personal Liability under the FMLA as to Mr. Dods

▄ Personal liability for violations of Federal employment laws generally has been rejected (unless the defendant engaged in "nondelegable acts" like harassment). The term "employer" in the FMLA should be construed consistently with the way that term has been construed in Title VII cases (and in cases under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.).* *See Frizzell v. Southwest Motor Freight, Inc.,* 906 F.Supp. 441 (E.D.Tenn.1995) (holding that a civil rights plaintiff failed to state a claim upon which relief can be granted under FMLA against individual; individual is not "employer" subject to liability under the Act).

▄ Ms. Carter urges, instead, that the court find that personal liability attaches under the FMLA and in support cites purportedly analogous authority under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* In *Brock v. Hamad,* 867 F.2d 804, 808–09 (4th Cir.1989), the court did hold, that personal liability for violations of the FLSA can attach to a single defendant who is a business' employee. The case, however, easily may be distinguished from the instant matter. In *Brock,* unlike here, in addition to being an employee, the individual defendant also "... clearly was the employer; it is not disputed that [the individual defendant] hired and directed the employees who worked for the enterprise...." 867 F.2d at 808, n. 6. Nothing in Ms. Carter's complaint purports

---

4.  Plaintiff cites the following inapposite retaliation cases: *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473 (7th Cir.1996) (charges of retaliation arising after original charge filed may be brought without double filing with EEOC); *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208–1210 (2nd Cir.1993) (the "reasonably related rule" allows judicial redress of retaliation claims arising after EEOC filing); *Owens v. New York City Housing*

*Authority,* 934 F.2d 405, 410–11 (2nd Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991) (retaliation claim may be heard even though not charged in EEOC complaint); and *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) (retaliation claim reasonably related to EEOC charge though not expressly alleged therein).

to assign such an "employer" status, either in fact or in form, to Mr. Dods.

Hence, the court will grant defendants' motion to dismiss COUNT IV against Mr. Dods on the grounds that there should be no personal liability under the FMLA.

### C. FMLA claim against RUS

■ The FMLA requires employers to grant certain employees up to twelve weeks of unpaid leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); see id § 2614 (providing that following a qualified leave an employee must be reinstated and given pay and benefits comparable to those the employee received before the leave); § 2615 (prohibiting employers from interfering with employees' FMLA rights); § 2617 (providing for civil enforcement by employees).

Rental Uniform Service argues that Ms. Carter's FMLA claim must be dismissed because (1) plaintiff's illness as a matter of law does not qualify as a serious health condition within the meaning of § 2612(a)(1)(D) because it lasted for too short a time period, and (2) plaintiff failed to provide notice to RUS of her intent to take leave under the FMLA, see 29 C.F.R. § 825.303(a) (1996).

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health provider." 29 U.S.C. § 2611(11). The legislative history gives some content to this definition. The following may constitute "serious health conditions:" heart attacks, heart conditions requiring heart bypass,... cancers, back conditions [requiring surgery],... appendicitis, pneumonia,... pregnancy, ... and severe morning sickness. H.R.Rep. No. 8, 103rd Congress, 1st Sess. pt. 1 at 29 (1993).

Congress did not intend to include "minor illnesses which last only a few days and surgical procedures which typically do not require only a brief recovery period." Id;

see, Murphy v. Cadillac Rubber & Plastics, Inc., 946 F.Supp. 1108, 1121 (W.D.N.Y.1996) (citing legislative history and regulations) ("It is clear that Congress intended the FMLA to cover illnesses lasting more than a few days."). Consistent with the legislative history, the regulations provide that "[a] period of incapacity of more than three consecutive calendar days" may qualify as a serious health condition, depending on the other factors present. 29 C.F.R. § 825.114(a)(2)(i) (1996) (emphasis added). Because the terms "serious health condition" and "continuing treatment" are ambiguous, the court must limit its inquiry to "whether the agency's answer is based upon a permissible construction of the statute." Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). "Administrative regulations promulgated in response to express delegations of authority, like the one at issue here, 'are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" Manuel v. Westlake Polymers Corp., 66 F.3d 758, 763 (5th Cir.1995) (quoting Chevron, 467 U.S. at 844, 104 S.Ct. at 2782).

■ Ms. Carter only missed two hours of work, and, although she was told by her doctor to remain at home for two days, she did not do so. In fact, plaintiff went to work straight from the hospital and worked the following business day. As a matter of law, an illness that incapacitates an individual for only two hours, or even for the two-day period the doctor advised Ms. Carter to take off from work, is not covered by the FMLA. See, e.g., Seidle v. Provident Mut. Life Ins. Co., 871 F.Supp. 238 (E.D.Pa.1994) (holding that when the plaintiff's child was examined only once by a physician and was not required to be absent from day care for more than three days, he had no serious medical condition within the meaning of the FMLA); Brannon v. OshKosh B'Gosh, Inc., 897 F.Supp. 1028 (M.D.Tenn.1995) (holding that proof of incapacitation for more than three days was required before plaintiff could qualify for FMLA protection).[5] As is clear from

5. In citing these cases, the court notes that neither one involved a Fed.R.Civ.P. 12(b)(6) motion.

the legislative history and regulations, something more serious is required. As a matter of law (even on a Rule 12(b)(6) motion), an absence from work of more than three consecutive calendar days is required to qualify as a "serious health condition."

Ms. Carter's objection to the contrary is that the regulations defining "serious health condition" are not legally binding upon the court and that plaintiff has satisfied the statutory requirement (which does not contain any three-day minimum requirement) by simply alleging that she suffered a "serious health condition." The plaintiff is correct that the regulations at issue are not necessarily legally binding upon the court. At least one court, however, expressly has adopted the regulations' "more than three consecutive days" rule. *Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 3 Wage & Hour Cas.2d (BNA) 1793, 1997 WL 393055 at *2 (8th Cir.1997). The regulations, however, are correct, or, at the very least, are consistent with the legislative history insofar as they require a minimum three-day period (to insure the requisite degree of seriousness). Moreover, to the extent Ms. Carter contends she has satisfied pleading requirements simply by alleging she has a "serious health condition," she is mistaken; whether her illness qualifies as a serious health condition is a legal question that she cannot dispose of simply by alleging it to be so.

The sufficiency of FMLA notice to an employer also may be resolved on the pleadings. "In addition to requiring that an employee have a 'serious medical condition,' the . . . regulations also require that 'an employee should give notice to the employer of the need for FMLA leave as soon as practicable. . . .'" *Robinson v. Overnite Transportation Co.*, 110 F.3d 60, 1997 WL 165416 at *7 (4th Cir.1997) (quoting 29 C.F.R § 825.303(a) (1993)). While an employee need not explicitly invoke the FMLA, he must give notice sufficient to notify the employer that "'leave

is needed. . . .'" *Id.* (quoting 29 C.F.R. § 825.302(c)(1993)). Here, Ms. Carter alleges that she delivered to RUS the doctor's note recommending that she take merely two days off from work and then received permission to leave work. Again, such a two day period does not qualify as medical leave for purposes of the FMLA. The fact, as well, that Ms. Carter chose to report to work the next business day, in disregard of that medical advice, further militates against her claim that she provided RUS with the necessary notice that she required FMLA-qualifying leave of the requisite duration. Finally, as Ms. Carter notes in her objections, even if the doctor's recommended two day period of time off work does not necessarily equate to the period of time she needed for FMLA medical leave, the only notice that Ms. Carter gave RUS was that of the two day period in the form of the doctor's note.

Therefore, the court will grant defendants' motion to dismiss COUNT IV against both defendants RUS and Mr. Dods.

## VI. Statute of Limitations of the § 1981 Claims and their Relation Back to the Original Title VII Complaint

The statute of limitations for claims under 42 U.S.C. § 1981 is two years. *NAACP Labor Committee of Front Royal v. Laborers' Int'l Union*, 902 F.Supp. 688, 710 (W.D.Va.1993). Ms. Carter's claims under COUNTS VI, VII, VIII, and IX accrued in October 1994; she filed her original complaint on September 10, 1996, and her amended complaint on December 23, 1996. Had Ms. Carter stated the § 1981 claims in her original complaint, they unquestionably would have been timely. Standing alone, the § 1981 claims in the amended complaint, however, would be time-barred. Thus, the crucial question is whether plaintiffs § 1981 claims "relate back" to Ms. Carter's original complaint (a complaint which she never served).[6]

On the other hand, the court in *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028 (M.D.Tenn.1995), criticized the regulations for being unduly broad (*i.e.*, including more medical conditions than Congress intended).

6. The court notes that the plain language of Fed.R.Civ.P. 15(c)(2) contains no notice requirement. Authority once to the contrary has been recognized as having been overruled. *Grigsby v. Johnson*, 1996 WL 444052 (D.D.C.1996) (recog-

Rule 15 (c) of the Federal Rules of Civil Procedure governs the analysis. That rule states as follows: "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or *attempted to be set forth* in the original pleading." Fed.R.Civ.P. 15(c)(2) (emphasis added).

Defendants argue that plaintiff's § 1981 claims do not relate back because they constitute new legal theories not alleged in plaintiffs original complaint; under Rule 15(c), this is not the standard for determining whether a claim should relate back. *See, e.g., Baruah v. Young,* 536 F.Supp. 356 (D.Md.1982). Instead, the question is whether the factual basis for the claims is the same; if the factual basis is the same, new legal theories are permitted. J. Moore, 3 Moore's, Federal Practice § 15.19[2] (Matthew Bender) (1997). Provided that the requisite "factual nexus" between the amendment and the original complaint is present, a § 1981 claim relates back by Fed.R.Civ.P. 15(c) to an original Title VII complaint for limitations purposes. *Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983), *aff'd* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

Here, the only new facts alleged in Ms. Carter's amended complaint are willfulness as to the FMLA violation and the allegations of illegality against Mr. Dods. Neither new fact affects plaintiff's § 1981 claims; the factual nexus between them and the Title VII claims remains in tact. Thus, the court will reject the defendants' argument that the presence of new legal theories in Ms. Carter's amended complaint precludes the normal operation of the relation back principle of Fed.R.Civ.P. 15(c).

The defendants next object that Ms. Carter's § 1981 claims cannot relate back to the Title VII claims because some of the latter claims are jurisdictionally barred. The Second Circuit addressed that issue and others relevant here, in *Goss v. Revlon,* 548 F.2d 405 (2nd Cir.1976). In *Goss,* the district court dismissed the plaintiff's original Title VII complaint for failure to have filed timely charges with the EEOC. 548 F.2d at 406. The court ruled, first, that as to § 1981 claims stated in an amended complaint.[7]

> ... inasmuch as the claim under 42 U.S.C. § 1981 arises out of the same "transaction or occurrence" set forth in the original complaint, it would relate back, for purposes of the statute of limitations, under Fed.R.Civ.P. 15(c). Since the original complaint was filed within the applicable three-year statute of limitations ... the § 1981 claim would itself be timely. *Id.* (citation omitted).

While this court cites *Goss* with approval insofar as it recognizes that an amended complaint which states otherwise time-barred § 1981 claims relates back to the date of an original Title VII complaint's filing, the court acknowledges the merit of defendants' objection to jurisdictional "bootstrapping." Defendants argue that relation back of Ms. Carter's otherwise untimely § 1981 claims to the filing date of her Title VII claims, only *some* of which are now barred for lack of subject matter jurisdiction, would constitute such "bootstrapping." This court declines to follow as precedent *Goss* and other authority to the extent to which such authority approves of such an approach. *See Goss,* 548 F.2d at 407 ("... the failure of a claimant to properly pursue his administrative remedies before the EEOC ... does not preclude him from instituting an action under § 1981 ... Thus, appellant's failure to meet the jurisdictional requirements of Title VII does not preclude his cause of action under § 1981.") (citing *Macklin v. Spector Freight Systems,* 478 F.2d 979, 996–97 (D.C.Cir.1973); *see also Stewart v. United States,* 620 F.2d 740 (9th Cir.1980) (per curiam) (stating that relation back is proper even where the original complaint failed for lack of subject matter jurisdiction).

nizing overruling of *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)).

7. Because the district court had never ruled on plaintiff's motion for leave to amend, the circuit court remanded the case to the district court for a determination of that motion and, upon the granting of leave to amend, for further proceedings. *Goss,* 548 F.2d at 407.

This court stops short of "bootstrapping" from Title VII claims which lack jurisdiction altogether to save an otherwise time-barred § 1981 claim. Here, the court has jurisdiction over several of Ms. Carter's Title VII counts; they are squarely before this tribunal. That Ms. Carter's § 1981 claims should relate back to them is proper under Rule 15(c). Thus, the court will deny defendants' motion to dismiss COUNTS VI, VII, VIII, and IX.

### VII. Statute of Limitations (Virginia State Law Claim)

Ms. Carter concedes that COUNT X (her Virginia claim alleging racially discriminatory discharge in violation of the Commonwealth's public policy) should be dismissed as barred by the one year statute of limitations.

Therefore, the court shall GRANT defendants' motion to dismiss COUNT X of plaintiff's complaint.

### VIII. Conclusion

For the reasons stated herein, the court shall overrule all objections to the Magistrate Judge's Report and Recommendation. Defendants' February 10, 1997 motion to dismiss shall be denied as to COUNTS I (discriminatory termination under Title VII), II (retaliatory termination under Title VII), VI (discriminatory termination under § 1981), VII (retaliatory termination under § 1981), VIII (discriminatory hiring practices under § 1981), and IX (racial harassment under § 1981).

Defendants' motion to dismiss be granted as to COUNTS III (discriminatory failure to rehire under Title VII), IV (termination for serious illness in violation of FMLA), V (racial harassment under Title VII), and X (Virginia law claim for racially discriminatory discharge).