# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3016

_____

Debbie Stekloff,      *
     *
         Appellant,      *
     *    Appeal from the United States
     v.      *    District Court for the Eastern
     *    District of Missouri.
     *
St. John's Mercy Health Systems,      *
     *
         Appellee.      *

_____

Submitted: April 14, 2000

Filed: July 12, 2000

_____

Before RICHARD S. ARNOLD, ROSS, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Debbie Stekloff was employed as a psychiatric nurse for St. John's Mercy Health Systems when she had an argument with her supervisor about making personal calls during work hours. Within minutes after the conclusion of the argument, Ms. Stekloff told her supervisor that she was too upset to perform her work and that she was leaving. Ms. Stekloff then contacted her physician, who met her at the hospital. The doctor wrote a note recommending that she not return to work for about two weeks,

and Ms. Stekloff immediately placed it in her supervisor's mailbox.  St. John's fired her eight days later for "job abandonment."

Ms. Stekloff contends, first, that St. John's violated her rights under the Family and Medical Leave Act of 1993 (FMLA), *see* 29 U.S.C. §§ 2601-2654, when it terminated her employment and, second, that St. John's tortiously interfered with her employment in a separate job.  The district court granted summary judgment to St. John's on the FMLA claim and then declined to exercise supplemental jurisdiction over the tortious interference claim.  Ms. Stekloff appeals, and we vacate the judgment and remand the case for further proceedings.

I.

The FMLA provides that an "eligible employee" may take a total of 12 weeks of unpaid leave during any 12-month period if a "serious health condition ... makes the employee unable to perform the functions of [the employee's] position," *see* 29 U.S.C. § 2612(a)(1)(D), *see also* § 2612(c).  It is undisputed that Ms. Stekloff was an "eligible employee," *see* 29 U.S.C. § 2611(2).  The parties differ, however, on whether Ms. Stekloff has met the other two conditions, that is, whether she had a "serious health condition" that rendered her unable "to perform the functions of [her] position."

We note initially our disagreement with Ms. Stekloff's contention that St. John's has waived its right to contest the fact that she has a "serious health condition."  Ms. Stekloff bases her argument on the provisions of the FMLA that allow an employer to require an employee to provide a "certification" from the employee's health care provider, *see* 29 U.S.C. § 2613(a).  These provisions also allow an employer who wishes to contest the validity of the medical certification to require the employee to obtain a second opinion, *see* 29 U.S.C. § 2613(c)(1).  In this case, St. John's made no effort to get a second opinion, and Ms. Stekloff suggests that St. John's has therefore waived its right to contest her assertion that she had a "serious health condition."

The language of § 2613(c)(1), however, is merely permissive: It states that an employer with "reason to doubt the validity" of the employee's certification "may" require the employee to obtain the opinion of a second health care provider. We do not read § 2613(c)(1) as requiring an employer to obtain a second opinion or else waive any future opportunity to contest the validity of the certification. We note, moreover, that several of our recent cases involving the FMLA have considered employer arguments that an employee did not have a serious medical condition in spite of the fact that no second opinion was sought. *See, e.g., Thorson v. Gemini, Inc.*, 205 F.3d 370, 375, 381-82 (8th Cir. 2000). We turn, therefore, to the merits of the parties' arguments.

## II.

The FMLA's definition of "serious health condition" includes "mental condition[s] that involve ... continuing treatment by a health care provider," *see* 29 U.S.C. § 2611(11)(B). The term is described in further detail in a relevant administrative regulation that states that a "serious health condition" includes, among other things, a "period of incapacity (i.e., inability to work ... due to the serious health condition ...) of more than three consecutive calendar days ... that also involves ... [t]reatment two or more times by a health care provider," *see* 29 C.F.R. § 825.114(a)(2)(i)(A). St. John's admits that Ms. Stekloff visited a health care provider at least twice to treat her condition but contends that she has failed to show that she was unable to work for more than three consecutive days.

We believe that Ms. Stekloff has presented more than enough evidence to allow a reasonable jury to find that she was unable to work in her job at St. John's for a period of more than three consecutive calendar days. Her physician testified that Ms. Stekloff "was sicker than her patients" and that she was unable to perform the essential functions of her employment at St. John's. The doctor emphasized that Ms. Stekloff needed a break from her work at St. John's because the environment in her unit (and presumably in close proximity to the supervisor with whom she had her disagreement) was "re-injuring a traumatized area of her life."

St. John's points out, however, that Ms. Stekloff was hired for a second part-time nursing job at St. Anthony's Home Care Agency shortly before she took her leave from St. John's. At that time, Ms. Stekloff was attending orientation during the mornings at St. Anthony's, which consisted of "shadowing" another registered nurse. Ms. Stekloff attended orientation at St. Anthony's the day after she took her leave from St. John's and continued to attend orientation during all times relevant to this case. St. John's contends that Ms. Stekloff did not suffer a "period of incapacity" of longer than three calendar days because she "worked" at St. Anthony's within one day of taking her leave from St. John's.

We think that the key issue in this case is whether Ms. Stekloff's inability to work at St. John's is enough to show that she was unable to work for FMLA purposes and therefore was incapacitated within the meaning of the FMLA, or whether she must further show that she was unable to work in some job other than her own. We are aware of the parallels between the issue before us and the inquiry that is made to determine whether a plaintiff is disabled within the meaning of the Americans with Disabilities Act of 1990 (ADA), *see* 42 U.S.C. §§ 12101-12213. An ADA plaintiff must demonstrate that he or she is unable to work in a "broad range of jobs" to show that he or she is unable to perform "the major life activity of working" and is therefore disabled for purposes of the ADA, *see* 29 C.F.R. § 1630.2(j)(3)(i). A plaintiff who shows only an inability to perform his or her own job has not, therefore, made a showing of disability sufficient to entitle him or her to the protections of the ADA. *See Taylor v. Nimock's Oil Co.*, No. 99-2018, 2000 WL 709495, at *3 (8th Cir. June 2, 2000).

We do not think, however, that the FMLA requires a similar showing to demonstrate an "inability to work." Indeed, the applicable regulations emphasize that the "ADA's 'disability' and [the] FMLA's 'serious health condition' are different concepts, and must be analyzed separately," *see* 29 C.F.R. § 825.702(b). Upon consideration of the declared purposes of the FMLA and its legislative history, we hold that a demonstration that an employee is unable to work in his or her current job due

-4-

to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one that the employee is unable to perform.

In reaching this conclusion, we think that it is important to understand that a motivating force behind the adoption of the FMLA was Congress's concern with the "inadequate job security for employees who have serious health conditions," *see* 29 U.S.C. § 2601(a)(4). The regulations emphasize the benefits of "stable workplace relationships," noting that "[w]hen workers can count on durable links to their workplace they are able to make their own full commitments to their jobs," *see* 29 C.F.R. § 825.101(c). We therefore think that a desire to promote job security and stability in workplace relationships was central to Congress's decision to pass the FMLA. The fact that the employee perhaps could find work elsewhere does nothing to mitigate the damage caused by a disruption in the working relationship already established between the employee and his or her current employer.

St. John's cites *Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 122 (8th Cir. 1997), in which we awarded summary judgment to the defendant employer, for the proposition that an employee must be generally incapacitated to have a "serious health condition" under the FMLA. *Martyszenko*, 120 F.3d at 122, however, did not hold that a plaintiff must show that he or she is totally incapacitated; it merely applied the regulation's definition of "serious health condition," which includes the requirement of some incapacity. We believe that Ms. Stekloff has provided sufficient evidence that she was incapacitated, at least to the extent of being unable to work in her current job, a showing that the plaintiff in *Martyszenko* failed to make: There was no indication that the health condition in *Martyszenko* "hindered [the plaintiff's son's] ability to participate in any activity at all," *id.* at 123.

St. John's also directs our attention to *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 n.5 (8th Cir. 1997), in which we suggested that it was doubtful that the plaintiff had a "serious health condition" because he worked in an unrelated job during the same time period in which his doctor had characterized him as totally disabled. We note,

however, that this passing comment was *dictum* and does not bind us. *See RTC Mortgage Trust v. Haith*, 133 F.3d 574, 577 (8th Cir. 1998). We believe, moreover, that the facts of *Carter* are distinguishable from ours. There was no indication in *Carter*, 121 F.3d at 1148, that the circumstances of the plaintiff's illness rendered him unable to work for one employer but not another, and therefore the fact that the plaintiff in *Carter* was working for a different employer at the same time as his alleged disability led us to speculate that his claim of being "totally disabled" was "doubtful." Ms. Stekloff, on the other hand, never claimed to have been "totally disabled," and the fact that she worked at St. Anthony's is not inconsistent with the serious health condition that she claims to have had.

We think, in other words, contrary to the position of St. John's, that the concept of "serious health condition" was meant to be "broad," *see* S. Rep. No. 103-3, at 28 (1993), *reprinted in* 1993 *U.S.C.C.A.N.* 3, 30, and that the FMLA's provisions should be interpreted to effect its remedial purpose. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 164 (1st Cir. 1998). In our case, a reasonable jury could find that Ms. Stekloff's condition rendered her unable to perform her duties at St. John's for more than three consecutive days, and we hold that that is enough for a jury to conclude that she was incapacitated within the meaning of the FMLA.

## III.

Having found that Ms. Stekloff raised a material question of fact as to whether she had a "serious health condition," we now inquire whether a jury could reasonably find that her condition rendered her "unable to perform the functions of [her] position," *see* 29 U.S.C. § 2612(a)(1)(D). The regulations define this phrase as "unable to work at all" or "unable to perform any one of the essential functions of the employee's position within the meaning of the American with Disabilities Act," *see* 29 C.F.R. § 825.115. These functions are determined "with reference to the position the employee held at the time ... leave commenced," *id.*

As we have said, we think that Ms. Stekloff has made a sufficient showing that she could not perform the essential functions of her position as a psychiatric nurse at St. John's, which allows us to conclude that she had a "serious health condition."  There is some question, however, as to whether the second requirement for FMLA eligibility, namely, that Ms. Stekloff be unable to perform the essential functions of her position, obligates her to show that she was unable to perform these functions in job environments other than her present one.

For the same reasons that we believe that the "serious health condition" inquiry should focus on an employee's current job with her current employer, we believe that the inquiry into whether an employee is able to perform the essential functions of her job should focus on her ability to perform those functions in her current environment.  Ms. Stekloff has provided sufficient evidence that she could not perform the essential duties of her position as a psychiatric nurse at St. John's as a result of the serious health condition, and it appears to us that that is all that 29 U.S.C. § 2612(a)(1)(D) requires.  Although the parties disagree on whether Ms. Stekloff's work at St. Anthony's rose to the level of work performed by a psychiatric nurse, we do not think that that issue is material to her FMLA eligibility:  Ms. Stekloff's leave is protected by the FMLA even if she was continuously able to work as a psychiatric nurse for some other employer.

## IV.

St. John's points out that a few hours elapsed between the time when Ms. Stekloff left the floor of the psychiatric unit and the time when she obtained the note from her doctor recommending that she stay home from work.  St. John's contends that Ms. Stekloff could properly be terminated for "abandoning" her patients for a few hours, and that such an action would not run afoul of the FMLA because Ms. Stekloff had not yet received permission from her doctor to leave work.  We disagree.

There is no requirement in the statute that an employee be diagnosed with a serious health condition before becoming eligible for FMLA leave.  The regulations note that absences attributable to the employee's serious health condition can qualify

for FMLA leave even if the employee "does not receive treatment from a health care provider during the absence," and cite as an example an asthmatic person who is unable to report to work because of an asthma attack. *See* 29 C.F.R. § 825.114(e). As a matter of common sense, moreover, it seems to us that an employee who falls and breaks a leg while on the job should not be required to attempt to keep working (and be subject to termination for failure to do so or even for failure to perform some tasks up to standard) until a doctor arrives and excuses him or her.

V.

For the reasons stated, we vacate the district court's grant of summary judgment to St. John's on Ms. Stekloff's FMLA claim and remand for further proceedings not inconsistent with this opinion. The district court declined to exercise jurisdiction over Ms. Stekloff's state-law claim since it had granted summary judgment to St. John's on her federal claim. In light of our remand with respect to Ms. Stekloff's FMLA claim, we also vacate the district court's dismissal of Ms. Stekloff's state-law claim and remand for a determination of whether the exercise of supplemental jurisdiction would be proper. *See* 28 U.S.C. § 1367(a), § 1367(c).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.