Christopher L. BAUER, Plaintiff,

v.

DAYTON–WALTHER CORPORATION, Defendant.

Civil Action No. 94–101.

United States District Court, E.D. Kentucky.

Jan. 5, 1996.

Kenneth W. Scott, Martin Jahn, Florence, KY, for plaintiff.

Jeffrey A. Savarise, Henry S. Alford, Greenebaum, Doll & McDonald, Louisville, KY, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The plaintiff Christopher L. Bauer (Bauer) brings this action claiming that his termination from employment with the defendant the Dayton–Walther Corporation (Dayton–Walther) violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the FMLA), because several of his absences were due to his "serious health condition." This matter is now before the Court upon the motion of Dayton–Walther for summary judgment. [Record No. 9]. Bauer has filed a response [Record No. 14] to which Dayton–Walther has replied [Record No. 16]. Central to the resolution of this motion is a determination of whether Bauer's condition constituted a "serious health condition" under the FMLA.

Being fully briefed, this matter is ripe for judicial consideration.

## FACTUAL BACKGROUND

Bauer first began working for Dayton–Walther as a general laborer on April 27, 1992. Through the collective bargaining pro-

cess, Dayton–Walther and representatives of its employees, United Automobile, Aerospace, and Agricultural Implement Workers of America, Local 1812 (referred to hereinafter as the Union), entered into a labor agreement. That labor agreement incorporated a "no-fault" attendance policy whereby employees incur certain numbers of points for absenteeism.[1] Upon the accumulation of six absenteeism points in a six month period, the employee could be automatically terminated. Apparently, Bauer had problems with absenteeism and was dismissed from his position on January 12, 1994, pursuant to the attendance policy.

On behalf of Bauer, the Union met with Dayton–Walther in an effort to have Bauer reinstated to his former position. Their efforts were successful and Bauer was reinstated by way of a "letter agreement" entered into by the Union, Bauer, and Dayton–Walther on April 18, 1994. Contrary to the assertion of Bauer, there is no indication that this letter agreement was an admission of misconduct on the part of Dayton–Walther. On the contrary, Dayton–Walther agreed to allow Bauer to continue in his position only "after receiving his assurances that he [would] correct his attendance problems."

Under the terms of this letter agreement, Bauer acknowledged that he was capable of performing his job without special accommodation. Bauer also agreed to be on probationary status for a period of one year. During that time, Bauer agreed that if he accumulated six points under the absenteeism policy guidelines, he would be subject to immediate discharge without resort to the grievance procedure provided by the absenteeism policy.

■ On April 28, 1994, less than one week after returning to work with Dayton–Walther, Bauer incurred one point after leaving his shift more than two hours before quitting time. In his response, Bauer claims that he took this time to see his grandfather who was ill.[2] On May 14, Bauer took "personal time"

(by his own admission not due to any illness) resulting in a second point. In fact, Bauer claims that he spent that day at a concert with his girlfriend.

On June 18, Bauer incurred a third point when he either missed that day of work or departed early. Bauer contends that this violation of the policy was due to rectal bleeding. He also admits, however, that he had some sort of common illness such as the flu or a cold. Bauer sought no medical attention for either of these maladies.

On June 21, Bauer left work more than two hours early resulting in a fourth point. According to attendance records, Bauer asked to leave early because of illness. Bauer now claims that his early departure was necessitated by his rectal bleeding. He does admit, however, that he could have performed the essential functions of his job despite his condition. In accordance with the absenteeism policy, Bauer received and signed a formal written notice informing him that he had incurred four points and warning that there was cause for concern with respect to his continued employment.

On the same day that he incurred his fourth point, Bauer contacted Dr. Thomas C. Eckert and made an appointment for July 11, 1994. Bauer claims that during the period of time up to the appointment, his rectal bleeding continued. Nevertheless, he missed no work from June 21 to July 11 and apparently had no difficulties performing his job duties.

On July 11, the day of the appointment, Bauer left work more than two hours early in order to attend his appointment with Dr. Eckert. This early departure resulted in his fifth point. At the examination, Dr. Eckert conducted a visual inspection. The records indicate no rectal bleeding evident at that time. Concerned that Bauer had reported intermittent hematochezia (bloody stool), Dr. Eckert scheduled a flexible sigmoidoscopy at King's Daughters' Memorial Hospital on July 14.

---

**1.** A copy of the attendance policy has been made a part of the appendix to the motion of Dayton–Walther for summary judgment. [Record No. 9].

**2.** Bauer does not argue that this absence was in any way covered by the FMLA. This is with good cause because the care for relatives entitlement to leave provision does not extend to grandparents. 29 U.S.C. § 2612(a)(1)(C).

So as not to incur a sixth point, Bauer reported to work on July 14 electing to forego the scope procedure. By his own admission, he was able to perform all job duties on that day.

On July 24, Bauer failed to report to work or to make timely notice of his absence. Under the attendance policy, this resulted in a total of two points, one for the missed day and one for the lack of prior notice or "AWOL" status. Bauer's absence was not health related. Rather, Bauer maintains that he was unaware that he was to work on that day as July 24, a Sunday, was not a regularly scheduled work day and he received no notice that he was to work on that day.

Having accumulated more than six points, Bauer was dismissed following a discharge hearing on August 5, 1994. The Union elected not to file a grievance over the termination.

On December 29, 1994, Bauer filed this action pursuant to 29 U.S.C. § 2617(2) (providing a private right of action against employers who interfere with rights guaranteed by the FMLA or interfere with proceedings under the FMLA) alleging a violation of his rights as guaranteed by the FMLA. Specifically, Bauer maintains that he was assessed certain points without regard for his "serious medical condition" and thus in violation of the FMLA.

### DISCUSSION

Dayton–Walther argues that it is entitled to summary judgment because Bauer's situation is not protected by the FMLA. In support of this general contention, Dayton–Walther contends that Bauer's illness does not constitute a "serious health condition" as this term of art is defined under the FMLA and regulations thereunder. 29 C.F.R. § 825.114. Accordingly, Dayton–Walther claims that there was no deprivation of Bauer's FMLA rights.

Bauer, on the other hand, takes issue with the "no-fault" attendance policy claiming that it takes no account of the protections afforded by the FMLA. Taking an expansive view of the protective intent of Congress in enacting the FMLA, Bauer maintains that an individual might be faced with a Catch–22: foregoing an examination to discover a potentially serious medical condition or incurring an absentee point under a "no-fault" attendance policy.[3]

At the outset it must be noted that only three different days of absenteeism could possibly implicate the protections of the FMLA. First, one point was incurred on June 18. Various explanations have been presented for this absence. Dayton–Walther points out that Bauer claims he had a common illness such as a cold. Bauer, on the other hand, suggests that his rectal bleeding prevented him from working that day. Second, on June 21 Bauer again incurred one point when he left work early. He claims that he left due to heavy bleeding and reported his situation to his supervisor. Third, on July 11 Bauer left work early for his appointment with Dr. Eckert.

### A. Family and Medical Leave Act

The FMLA guarantees eligible employees the right to take up to twelve weeks unpaid leave per year in certain specified situations. An employee may use this time to care for a newborn son or daughter. That time is available where a son or daughter has been placed with the employee for adoption or foster care. In situations where a spouse, son, daughter, or parent of an employee has a "serious health condition," that employee may use this time to provide care. And finally, where the employee has "a serious health condition that makes the employee unable to perform the essential functions of the position of such employee" the twelve week leave period is available. 29 U.S.C. § 2612(a)(1)(A)–(D). Bauer's claim rests on

---

**3.** Bauer also contends that one point was not expunged as required under the terms of the attendance policy. Although it is not clear that the expungement clause was applicable to Bauer in light of his probationary status under the letter of agreement, even if it is assumed that he was entitled to have one point removed, noncompliance with this provision would give rise to a state breach of contract claim. A pure breach of contract claim is not actionable under the private right of action provision of the FMLA. 29 U.S.C. § 2617(a).

him having a "serious health condition" as understood through this final provision.

The FMLA and the regulations thereunder prohibit an employer from discriminating against an employee who has used FMLA leave or otherwise interfering with the exercise or attempted exercise of FMLA rights. 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c). The regulations specifically provide that FMLA leave time cannot be counted under a "no-fault" attendance policy. *Id.* The relevant issue, therefore, is whether Bauer's condition, viewed as he alleges it to be, qualifies for protection under the FMLA.

## B. Serious Health Condition

The relevant statutory definition of serious health condition includes ". . . an illness, injury, impairment, or physical or mental condition that involves . . . (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The regulations, intended to illuminate the contours of the scope of the statutory definition, set out six different definitions of serious health condition involving continuing treatment. 29 C.F.R. § 825.114(a)(2).

Only three of those definitions are relevant here: first, "a period of incapacity (i.e., inability to work . . .) of more than three consecutive calendar days. . . ." § 825.114(a)(2)(i); second, a "period of incapacity or treatment for such incapacity due to a chronic health condition" (that is, one which requires periodic visits for treatment, continues over an extended period of time, and may cause an episodic rather than continuing period of incapacity) § 825.114(a)(2)(iii); third, a "period of absences to receive multiple treatments . . . for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment. . . ." § 825.114(a)(2)(v).

■ A review of the record reveals that Bauer's claims of health related absences could never qualify under the first regulatory definition because, even assuming incapacity, it never lasted more than three days. The June 18 absence, whatever the exact cause, lasted only one day. The day after the June 21 absence, Bauer came to work and worked an entire shift. Likewise with the July 11 absence.

■ Nor did Bauer suffer from a "chronic serious health condition" as defined in the regulations. Bauer sought medical attention on only one occasion due to his condition. Apparently, no treatment of this condition was ever administered. Moreover, Bauer's condition did not present the sort of episodic period of incapacity contemplated. Even viewing the factual disputes most favorably for Bauer, his condition caused him only to miss work one full day and leave early twice. Bauer's condition falls far short of the sort of chronic serious health problems such as diabetes and epilepsy within the purview of the FMLA.

■ Finally, there is absolutely no support in the record for the contention that Bauer received multiple treatments for a condition which, if left untreated, would have resulted in incapacity for more than three consecutive calendar days. Clearly, Bauer never received multiple treatments. Further, it is not clear that without treatment his condition was such that he would have missed work for the requisite period.

Concluding that Bauer's condition does not fall within the regulatory definitions does not necessarily exclude his condition from coverage as a "serious health condition" under the statute. When this conclusion is viewed in conjunction with the legislative history of the FMLA, however, it becomes clear that the term "serious health condition" was not intended to include Bauer's condition.

■ Broadly speaking, Congress sought to parse out illnesses which it believed should be treated under sick leave policy from those much more serious illnesses that implicate the protections of the FMLA. *See Seidle v. Provident Mut. Life. Ins. Co.,* 871 F.Supp. 238, 242 (E.D.Pa.1994) (citing H.R.Rep. No. 8, 103rd Cong., 1st Sess., pt. 1 at 29 (1993)), U.S.Code Cong. & Admin.News 1993 at 3, 31. Rectal bleeding is nowhere listed in the nonexclusive list of examples of "serious health conditions" which includes afflictions such as heart attacks, most cancers, and pneumonia

to name a few. Against this backdrop, the Court concludes that Bauer's rectal bleeding is not a player among the "serious health conditions" cast by Congress.

### C. Potential Serious Health Condition

In *Seidle*, 871 F.Supp. 238, the federal district court entertained the question of whether a potentially "serious health condition" could fall within the purview of the FMLA. This Court agrees with the approach taken in *Seidle* with respect to the potentiality of a condition to become worse. The condition must be taken for what it was during the relevant time period, and not for what it could have conceivably become. As explained above, Bauer's condition of rectal bleeding, whatever medical label we might attribute to it,[4] is simply not the sort of serious medical condition which Congress contemplated to be covered by the FMLA. The fact that it could have turned out to be something as serious as rectal cancer or as relatively insignificant as hemorrhoids is speculative and irrelevant.

Finally, the Court notes that if Bauer was in a Catch-22 then it was only by his own device. Bauer was not faced with only two options; to forego medical assistance or to incur an absentee point. Nothing prevented Bauer from attempting to set up another appointment time when he was not working. Apparently, Bauer made no effort to accommodate his work schedule. Reconciling appointments with a work schedule is commonplace.

### CONCLUSION

In conclusion, the Court finds that during the time period in question Bauer did not have a serious medical condition as defined by Congress in the FMLA and the regulations thereunder. As a result, the termination of Bauer by Dayton-Walther did not violate the FMLA and the motion of Dayton-Walther for summary judgment must be granted.

---

4. Bauer himself asked Dr. Eckert if his condition might have been caused by hemorrhoids. Dr. Eckert's medical report does not, however, make this diagnosis. Bauer indicated that he had experienced hematochezia, a bleeding in the rec-

Accordingly,

**IT IS ORDERED HEREIN:**

(1) That the motion of Dayton-Walther for summary judgment [Record No. 9] be, and the same hereby is, **GRANTED;**

(2) That this matter be, and the same hereby is, **DISMISSED** and **STRICKEN FROM THE ACTIVE DOCKET.**

### *JUDGMENT*

In accordance with the Memorandum Opinion and Order of even date and entered contemporaneously herewith,

**IT IS HEREBY ORDERED:**

(1) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**

(2) That all pending motions be, and the same hereby are, **DENIED AS MOOT.**

(3) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY.**

(4) That this Order is **FINAL AND APPEALABLE** and **THERE IS NO JUST CAUSE FOR DELAY.**

tum that results in bloody stool. To date, no diagnosis of Bauer's condition has been made. His condition, therefore, can only be construed as rectal bleeding cause unknown.