11 F.Supp.2d 1082 (1998)
Marsha KROHN, Plaintiff,
v.
Jack W. FORSTING, et al., Defendants.
No. 4:97-CV-413 CAS.
United States District Court, E.D. Missouri, Eastern Division.
July 17, 1998.
*1083 *1084 Rick Barry, Rick Barry Law Office, Clayton, MO, for Plaintiff.
Elbert A. Walton, Jr., St. Louis, MO, for Defendants.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendants Jack W. Forsting and the City of Berkeley, Missouri's motion to dismiss for lack of subject matter jurisdiction, and amended motion for summary judgment. Plaintiff opposes the motions.
Plaintiff Marsha Krohn brings this claim pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. Plaintiff alleges that defendants Forsting, Joshua Richardson and the City of Berkeley ("City") denied her request for medical leave after she suffered an injury during her employment, and subsequently terminated her employment because of her FMLA leave request. Defendants Forsting and the City (collectively, the "defendants") move to dismiss for lack of subject matter jurisdiction on the basis that plaintiff has failed to exhaust her administrative remedies. These defendants also move for summary judgment on several grounds.[1]

I. Motion to Dismiss.

The Court will first address the issue of its subject matter jurisdiction.

A. Standard of Review.
"In order to properly dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must successfully be challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d at 590, 593 (8th Cir.1993) (citing Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir.1990) (citation omitted)). Distinguishing between a facial and factual challenge is critical to determining how the Court should proceed when resolving a motion to dismiss for lack of subject matter jurisdiction.
Under a facial challenge to jurisdiction all of the factual allegations in the plaintiff's complaint are presumed to be true, while under a factual challenge no presumptive truthfulness attaches to the allegations in the complaint. See Titus, 4 F.3d at 593 & n. 1. Further, under a factual challenge the district court is afforded the unique power to make factual findings which are decisive of its jurisdiction. See Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). As noted by the United States Court of Appeals for the Eighth Circuit,
Because at issue in a factual 12(b)(1) motion is the trial court's jurisdictionits very power to hear the casethere is substantial authority that the trial court is free to weigh the evidence and satisfy for itself as to the existence of its power to hear the case.
Titus, 4 F.3d at 593 n. 1.
The Court concludes that defendants have made a factual challenge to the plaintiff's complaint. Consequently, the Court is not limited to an inquiry into undisputed facts, but may hear conflicting evidence and decide for itself the factual issues which determine jurisdiction. Williamson, 645 F.2d at 413.

*1085 B. Discussion.
Defendants move to dismiss, asserting that the Berkeley City Charter granted plaintiff the right to an administrative review of her alleged denial of leave under the FMLA, she did not exercise that right, and therefore the Court lacks subject matter jurisdiction over this action. In support, defendants cite cases interpreting the Missouri Administrative Procedure and Review Act, RSMo. §§ 536.010 et seq., and two FMLA cases, Mann v. Haigh, 891 F.Supp. 256 (E.D.N.C.1995), aff'd, 120 F.3d 34 (4th Cir. 1997), and Ladd v. Second Nat'l Bank of Warren, 941 F.Supp. 87 (N.D.Ohio 1996).
In response, plaintiff states that she attempted to appeal her termination to the City's Civil Service Board but her appeal was refused, and she challenges the adequacy of procedural due process available through the Civil Service Board. Plaintiff also contends that any appeal would have been futile, but does not specify why. Plaintiff urges the Court to assume jurisdiction over the case to resolve disputed factual issues, and assails the City's lack of effort to implement the FMLA by posting notices, establishing procedures, or educating its employees about their rights under the FMLA. Plaintiff also relies on McCarthy v. Madigan, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), for the proposition that a balancing of interests test should be utilized to determine whether exhaustion should be required, but does not provide any evidence or make any arguments concerning the interests to be balanced.
As an initial matter, the Court rejects as meritless defendants' unsupported argument that the requirements of Missouri administrative procedure law should be grafted onto plaintiff's federal claim.
With respect to federal causes of action, where Congress specifically mandates exhaustion of administrative remedies, exhaustion is required. McCarthy v. Madigan, 503 U.S. at 144, 112 S.Ct. 1081 (citing Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)). Where Congress has not clearly required exhaustion, however, "sound judicial discretion governs." Id.
The FMLA does not contain an exhaustion requirement. See 29 U.S.C. §§ 2601 et seq.; 29 C.F.R. § 825.400(a); Danfelt v. Board of County Commissioners of Washington Co., 998 F.Supp. 606, 609 (D.Md.1998); Spurlock v. NYNEX, 949 F.Supp. 1022, 1030 (W.D.N.Y.1996). The cases cited by defendants are easily distinguished on the facts. In Mann v. Haigh, 891 F.Supp. 256 (E.D.N.C.1995), a civilian employee of the U.S. Marine Corps brought an action under the FMLA. The district court concluded that the plaintiff was a federal employee governed by Title II of the FMLA. Title II, unlike Title I which applies to the private sector and non-federal governments, does not provide a private cause of action. As a result, the district court concluded the plaintiff must pursue his administrative remedies prior to obtaining judicial review. Because Title I applies to the plaintiff in the instant case, Mann is inapposite.
In Ladd v. Second Nat'l Bank of Warren, 941 F.Supp. 87 (N.D.Ohio 1996), a former employee of a bank placed into receivership by the Resolution Trust Corporation and succeeded by the Federal Deposit Insurance Corporation sued under the FMLA. The FDIC as defendant moved for dismissal, asserting that the district court lacked subject matter jurisdiction because the plaintiff had not exhausted her administrative remedies as required by the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d). The district court relied on the uniform body of law interpreting of the applicable FIRREA provision, and held that no jurisdiction exists over claims against a failed banking institution for which the RTC or FDIC has been appointed receiver, unless administrative procedures are complied with. Id. at 90-91. Thus, the Ladd decision is also readily distinguished and does not apply to the instant case.
Therefore, the Court must determine in the exercise of its discretion whether plaintiff should be required to exhaust administrative remedies prior to bringing suit under the FMLA.
Substantial interests underlie the exhaustion doctrine, including that disputes be resolved and errors corrected in the first *1086 instance by the parties involved rather than the courts, and that judicial efficiency be promoted by informal resolution of disputes or, at minimum, the creation of a useful record for subsequent judicial consideration. McCarthy, 503 U.S. at 145, 112 S.Ct. 1081. Nonetheless, "federal courts are vested with a `virtually unflagging obligation' to exercise the jurisdiction given them", id. at 146, 112 S.Ct. 1081 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)), which can weigh against imposition of an exhaustion requirement.
Therefore, the Court must determine whether exhaustion is required, balancing plaintiff's interest in retaining prompt access to a federal judicial forum against the countervailing interests favoring exhaustion. See McCarthy, 503 U.S. at 146, 112 S.Ct. 1081. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." Id. (citation omitted). In making this determination, the Court should examine both the nature of the claim presented and the characteristics of the particular administrative procedure provided. Id.
The FMLA claim presented in this case asserts the wrongful termination of plaintiff's employment as a firefighter after her legitimate request for leave under the FMLA was wilfully denied. Plaintiff seeks reinstatement to her position, with back wages, and restoration of seniority and other benefits of employment, double damages for defendants' willful action, and reasonable attorney's fees.
In support of an exhaustion requirement, defendants point to Article VII, Section 5 of the Charter of the City of Berkeley, which states that an employee in the City's classified service (which included the plaintiff), who has been suspended, discharged or reduced in rank "shall, ... have the privilege of a public hearing before the Civil Service Board." (See Ex. A to Defs.' Mot. Dismiss.) The Charter does not state that an employee must exercise this "privilege" in order to bring legal action against the City.
Defendants also contend that a three-step grievance procedure for the appeal of disciplinary reprimands in the City's Personnel Rules and Regulations is applicable to plaintiff. Under this procedure, any employee who has been subjected to discipline "may" (i) orally request a review of the action with her supervisor, within three (3) days of the supervisor's action complained of; (ii) orally request review by the Department Head, within five (5) days of the supervisor's unsatisfactory response; and (iii) request review by the Civil Service Board in writing, within ten (10) days of the Department Head's response. (See Personnel Rules and Regs., Art. 9, §§ 6.07-.08, attached to Defs.' Reply Mem.) The defendants contend that even if plaintiff submitted a written grievance, which they dispute, her grievance was not filed with the Civil Service Board until fourteen (14) days after the Department Head's response, and therefore was untimely, barring this action.
Having considered the nature of the plaintiff's case and the available procedures, the Court concludes that exhaustion of plaintiff's administrative remedies is not required prior to initiating this FMLA action. First, the plaintiff seeks to enforce important rights granted to her by federal law, and seeks reinstatement to her employment as a City firefighter and all benefits accruing therefrom. These are substantial interests. Second, the Court notes that all the cited language concerning the City's available administrative remedies is permissivein no instance is an employee informed that she is mandated to utilize these procedures. Third, the short deadlines provided in the City's Personnel Rules and Regulations may be a "trap for the inexperienced and unwary" employee, who may not be represented by counsel in the early stages of contesting an adverse employment action. See McCarthy, 503 U.S. at 153, 112 S.Ct. 1081 (short filing deadline for federal prison grievance counseled strongly against exhaustion as a prerequisite to the filing of a federal court action). Further, the City's arguments indicate that it is not willing to waive the deadlines, but rather uses them as a shield to attempt to deny plaintiff review entirely. Significantly, the City has not asserted that it will be prejudiced in any way *1087 by plaintiff's failure to exhaust the administrative process.
The Court having considered and weighed these factors finds that plaintiff's interest in immediate judicial review outweighs the City's interests in the efficiency or administrative autonomy that exhaustion would further. See McCarthy, 503 U.S. at 146, 112 S.Ct. 1081. Accordingly, the motion to dismiss for lack of subject matter jurisdiction should be denied.

II. Motion for Summary Judgment.

The Court now turns to defendants' motion for summary judgment. Defendants move for judgment as a matter of law on the grounds that (i) plaintiff was not under treatment by a health care provider for a serious health condition at the time of her request for FMLA leave; (ii) the FMLA does not provide leave for the care of an elderly grandparent; (iii) plaintiff was not entitled to FMLA leave because she had previously taken FMLA leave within the twelve-month period prior to her August 1, 1996 request, specifically from July 1995 through October 1995; and (iv) plaintiff cannot prove that her employment was terminated because she requested FMLA leave, as the termination occurred because she did not return to work.

A. Standard of Review.
The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548. Further, the Court is "`not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir.1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir.1990)).

B. Facts.
In passing on a motion for summary judgment, this Court is required to view the facts in a light most favorable to the non-moving party, and must give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With the foregoing standards in mind, the Court finds the following facts for purposes of this motion.
Plaintiff Marsha Krohn began working for the City as a police officer in April 1991. Plaintiff transferred to the fire department in June 1993. While on duty in November 1994, plaintiff suffered an injury to her hip and back. She was placed on light duty and *1088 received some therapy from the City's "company doctor", a Dr. Wayne, but he told her that treatment options were limited because she was pregnant at the time. (Krohn Dep. at 14.) Plaintiff saw Dr. Wayne again in October 1995 after the birth of her child, but he told her to try to rehabilitate her injuries on her own, and to come and see him "sporadically." (Krohn Dep. at 15.) Plaintiff saw Dr. Wayne again in December 1995, one other unknown date, and finally in June 1997.
Plaintiff applied for pregnancy leave effective July 1, 1995, for the birth of her son Christopher, who was born July 23, 1995. The defendants told her that she needed to apply instead for leave under the FMLA, and plaintiff did so. Plaintiff was on leave for twelve weeks and returned for her regular shift on October 2, 1995.
Plaintiff suffered a second injury while on duty on April 28, 1996. She injured her knee, back, hip and hand. The City sent her to a Dr. Catanzaro for treatment, who she saw several times. Dr. Catanzaro recommended that she see Dr. Chabot, who was in the same office with Dr. Wayne. Plaintiff saw Dr. Chabot a total of seven or eight times between June 1996 and September 1996. She also made her personal physician, Dr. Boehmer, aware of the problems she was having and informed Dr. Boehmer that she was under the care of the City's physicians.
Plaintiff had been working on regular duty since the April 1996 injury, but Dr. Chabot placed her on light duty status in June 1996. Plaintiff remained on light duty, working forty-hour weeks in the Inspection Department, until August 5, 1996. At that time, Dr. Chabot issued a written opinion that plaintiff could return to regular duty.
Plaintiff submitted a written request for FMLA leave on August 1, 1996. The body of the request stated:
Due to the following sudden circumstances arising in my family, listed below I am requesting a family leave until such problems can be rectified. I have no child care provider for my baby at this time, and am in the process of trying to find someone to fill that position.
As you are aware I have my elderly grandmother (94) care to provide for also as she just moved in with me, and I will need to also find a care giver to provide for her needs while I am away at work.
I am also recovering from a knee injury sustained at work and even though the doctor just cleared me to return to work from light duty, my therapy was discontinued at this time but I was instructed to try and work out the injury at home. I feel continuing back without more strengthening of my injury could result in further injury to my knee, so this time off I would be able to concentrate on the rehabilitation of my injury with out further chance of reinjury.
I am aware family leave can consist up to 12 weeks off, without pay, and I am requesting same but hope to remedy my child and elderly care problems sooner and rehabilitate my injury at a sooner date which I will notify you of. I would appreciate your immediate attention on this matter.
See Ex. 1 to Pl.'s Mem. in Opp.
On August 2, 1996, defendant Forsting, the Acting Chief of the Berkeley Fire Department, denied plaintiff's request for FMLA leave. The body of his letter stated:
I understand your dilemma you are in and sympathize with you, but due to several reasons listed I have to deny your request for FMLA.
 Lack of a child care provider is not an acceptable reason for the FMLA being that your son is more than a year of age and without serious health problems.
# 2612-2 Expiration of entitlement: The entitlement to leave under subparagraphs (A) and (B) of paragraph (1) for a birth or placement of a child shall expire at the end of the 12-month period beginning on the date of such birth or placement.
 Care of elderly grandparents not covered under FMLA
# 825.112 3 To care for employee's spouse, son, daughter or parent with a serious health condition; and (4) Because of the a [sic] serious health condition that makes the employee unable to perform the functions of the employee's job.

*1089  Due to your last use of FMLA being less than 12 months old you are not eligible for FMLA until October 1996.
# 825.200 A: An eligible employee is entitled to a total of 12 work weeks of leave during any 12-month period.
If you have any questions please feel free to contact me. See Ex. 2 to Pl.'s Mem. in Opp.
In August 1996, plaintiff saw her personal physician, Dr. Boehmer, complaining of chest pains and severe anxiety and believing she might be suffering a heart attack, and also complaining of hip and back pain. Plaintiff does not recall if Dr. Boehmer gave her a written opinion concerning her condition, but states that he excused her from work for several weeks due to the chest pains. It does not appear from the record whether plaintiff communicated Dr. Boehmer's restrictions or opinions to the defendants. Dr. Boehmer released plaintiff to return to work effective September 5, 1996.
On September 10, 1996, plaintiff wrote a letter to Chief Sims of the Berkeley Fire Department, stating that she saw Dr. Chabot on September 9, 1996 for her knee injury, and that he "advised he could do no more for the injury and pain" she still suffered. (Pl.'s Ex. 3.) In the letter, plaintiff also said she was "still suffering from severe pain" in her back, hip, knee and leg areas from on-duty injuries, was seeking further medical attention, and was unable to return to work until her injuries "are rehabilitated bringing my strength and physical agility up to normal standards, whereupon I can perform my job safely and proficiently." Id. Plaintiff closed by stating she would keep Chief Sims advised of the situation. Id.
On September 18, 1996, defendant Forsting wrote plaintiff a letter which stated that according to Dr. Chabot, she was able to return to work on full duty, and therefore she was scheduled to return to work the next day, September 19, 1996. The letter stated that failure to return to work on that date would result in disciplinary action which could include termination. (Pl.'s Ex. 4.) Forsting hand delivered the letter to plaintiff, and told her that if she could produce documentation concerning her medical condition, the matter could be resolved.
Plaintiff did not appear for work on September 19, 1996. Plaintiff's employment was terminated on September 19, 1996 by a letter from defendant Forsting, which stated, inter alia, "your continued failure to report for work and your numerous unexcused absences ... leave the City of Berkeley with no other alternative but to terminate your employ with the City." (Pl.'s Ex. 5.)

C. Discussion.
The FMLA applies to an "eligible employee," one who works a requisite number of hours, and employers that employ fifty or more people and engage in interstate commerce. 29 U.S.C. § 2611(2) & (4). The parties do not dispute that the City is a covered employer and that plaintiff is an "eligible employee." An eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period for one or more of the following reasons:
(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
(B) Because of the placement of a son or daughter with the employee for adoption or foster care.
(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.
29 U.S.C. § 2612(a)(1).
Both parties cite provisions of FMLA's implementing regulations promulgated by the Secretary of Labor, as directed by 29 U.S.C. § 2654. Because plaintiff's leave request occurred in 1996, the final version of the regulations effective April 6, 1995 applies to this case. See 60 Fed.Reg. 2180 (1995); see also Gay v. Gilman Paper Co., 125 F.3d 1432, 1434 n. 4 (11th Cir.1997).
Plaintiff's FMLA leave request, which was based upon her need to find child care for her son, to care for her elderly grandmother, and to rehabilitate her own knee injury, appears *1090 to implicate subsections (A), (C) and (D) cited above.

1. Serious Health Condition.

Defendants first argue that plaintiff was not under treatment by a health care provider for a serious health condition at the time of her request for FMLA leave, and thus was not entitled to leave under 29 U.S.C. § 2612(a)(1)(D).[2] Defendants' argument is based on the fact that plaintiff was working on light duty and then was cleared by Dr. Chabot to return to regular duty. Defendants state, incorrectly, that the FMLA "requires employees seeking leave, based on a serious health condition, to provide certification of the condition." (Defs.' Sugg. Supp. Mot. Summ. J., at 6.) Defendants contend plaintiff did not provide the City with the date, probable duration or appropriate medical facts to support her claim of a serious medical condition, as required by 29 U.S.C. § 2612(b).
Plaintiff responds that under the FMLA, an employer may require that an employee's request for leave under subparagraph (C) or (D) of § 2612(a)(1) be supported by a medical certification from an appropriate health care provider to substantiate the request. 29 U.S.C. § 2613(a). Plaintiff states that her request for FMLA leave was made on August 1, 1996 and officially denied on August 2, 1996, and defendants did not request that she provide any medical certification before denying her request.
Plaintiff contends that defendants' decision to deny her FMLA leave was based solely on the fact that the City's physician, Dr. Chabot, had given her clearance to return to regular duty, although defendant Richardson, at least, knew that plaintiff's fitness for duty was seriously disputed in ongoing worker's compensation proceedings. Plaintiff argues that defendants' reliance on Dr. Chabot's opinion was improper because (i) under the FMLA, she should have been asked to provide medical certification to support her application, see 29 U.S.C. § 2613(a), but defendants did not give her an opportunity to support her request, and did not request any medical certification from her until September 18, 1996, long after the FMLA request was denied; and (ii) while FMLA regulations provide that if an employer doubts the validity of a medical certification, it may at its own expense obtain a second opinion, 29 C.F.R. § 825.307(a)(2), the selected health care provider may not be employed by the employer on a regular basis. See 29 C.F.R. § 825.307(b). Plaintiff asserts that because Dr. Chabot is an employee of the City, his opinion should not have been considered in evaluating her request for FMLA leave.
Courts have held that where an employer requests and receives from the employee a physician's certification that the employee's serious health condition does not prevent him from performing the functions of his job, the employer may rely on that certification until the employee provides a contradictory medical condition. See, e.g., Stoops v. One Call Communications, Inc., 141 F.3d 309, 313 (7th Cir.1998) (employer did not violate FMLA by terminating plaintiff's employment for excessive absenteeism, where plaintiff's physician certified that plaintiff's condition did not require him to miss work).
In contrast, viewing the facts of this case in the light most favorable to the plaintiff, defendants did not request that plaintiff provide medical certification to support her leave request, but instead relied on the opinion of their chosen physician to determine that plaintiff did not have a serious health condition which rendered her unable to perform the functions of her position, an opinion they knew she disputed. Once an employee notifies her employer of a condition that is potentially FMLA-qualifying, the burden shifts to the employer to make further inquiry whether the condition actually qualifies under the FMLA. See Gay v. Gilman Paper Co., 125 F.3d at 1434. The defendants essentially attempt to shift the burden of further inquiry to the plaintiff, but they have provided no citation to case law, statutory or regulatory authority which serves to support their position, and the Court will not conduct independent research on their behalf.
The defendants' arguments in their motion for summary judgment and the foregoing *1091 discussion do not reach the merits of the key issue, i.e., whether plaintiff had a serious health condition within the meaning of the FMLA at the time she requested leave on August 1, 1996. On the record before it, the Court has reservations concerning whether plaintiff had such a condition which rendered her unable to perform the functions of her position, given her ability to work light duty.[3] Nonetheless, the Court finds that defendants have failed to meet their initial burden to establish that no genuine issues of law or material fact remain which preclude judgment in their favor, and this aspect of their motion should therefore be denied.

2. Care of Grandmother.

Second, the defendants move for summary judgment to the extent plaintiff's claim is based on her FMLA request for leave to care for her elderly grandmother. The defendants note that 29 U.S.C. § 2612(a)(1)(C) authorizes FMLA leave to care for parents but not grandparents, citing Bauer v. Dayton-Walther Corp., 910 F.Supp. 306, 308 n. 2 (E.D.Ky.1996) (holding that the FMLA's "care for relatives" entitlement does not extend to grandparents), aff'd, 118 F.3d 1109 (6th Cir.1997).
The FMLA defines "parent" as "the biological parent of an employee or an individual who has stood in loco parentis to an employee when the employee was a son or daughter." 29 U.S.C. § 2611(7). The regulations provide, "Persons who are `in loco parentis' include those with day-to-day responsibilities to care for and financially support a child or, in the case of an employee, who had such responsibility for the employee when the employee was a child. A biological or legal relationship is not necessary." 29 C.F.R. § 825.113(c)(3).
In support of their motion, defendants refer to plaintiff's deposition testimony that her grandmother was not her primary caregiver between the time of her birth and age twenty-one, and that her grandmother never took care of plaintiff as a parent. (Krohn Dep. at 57, 58.)
In response, plaintiff concedes that FMLA leave does not ordinarily extend to the care of grandparents, but argues that had the City fulfilled its obligations under 29 U.S.C. § 2619 to appropriately disseminate the pertinent provisions of the FMLA, she "may have understood the parameters to the Act." (Pl.'s Mem. Opp. at 5.) This vague argument misses the mark, as any failure by defendants to comply with the FMLA's notice requirements does not create substantive rights in the plaintiff. See, e.g., Beal v. Rubbermaid Commercial Prods., Inc., 972 F.Supp. 1216, 1226 (S.D.Iowa 1997) (holding fact that defendant violated FMLA by including erroneous information in its employee handbook was immaterial where the plaintiffs were not eligible for protection under the FMLA), aff'd, 149 F.3d 1186 (Table), 1998 WL 231267 (8th Cir. May 7, 1998).
*1092 The plain language of the statute does not authorize FMLA leave for the care of grandparents. 29 U.S.C. § 2612(a)(1)(C); see Bauer, 910 F.Supp. at 308 n. 2. Therefore, plaintiff could only be entitled to FMLA leave to care for her grandmother if the grandmother had stood in loco parentis to plaintiff. Plaintiff has presented no evidence and indeed does not argue that her grandmother stood in loco parentis to her.
The Court finds the undisputed facts reflect that plaintiff was not entitled to FMLA leave to care for her grandmother, and therefore defendants did not violate the FMLA by denying plaintiff leave on that basis. Accordingly, defendants City and Forsting are entitled to summary judgment on this aspect of plaintiff's claim.

3. Care of Son.

Next, defendants argue that plaintiff was not entitled to FMLA leave to care for her son because (i) plaintiff's entitlement to FMLA leave to care for her son expired twelve months after his birth, prior to her August 1, 1996 request; and (ii) plaintiff's son did not have a serious health condition.
Defendants are correct that entitlement for leave for the birth of a child expires at the end of the twelve-month period beginning on the child's date of birth. See 29 U.S.C. § 2612(a)(2).[4] Defendants established that plaintiff's son was born on July 23, 1995, and she previously took FMLA leave to care for him from July 1995 through October 1995. Defendants assert that plaintiff was not eligible to again take FMLA leave to care for her son in August 1996, because the entitlement expired on July 23, 1996, twelve months after his birth. Defendants also assert that plaintiff did not contend her son had a serious health condition when she requested FMLA leave in August 1996, so as to entitle her to leave under 29 U.S.C. § 2612(a)(1)(C).
In response, plaintiff asserts without any evidentiary support that the secretary to the Chief of Police had been granted FMLA leave in order to obtain child care. Plaintiff also responds to a portion of defendants' argument concerning her use of FMLA leave within the preceding twelve months, as follows. Plaintiff argues that under FMLA regulations, an employer may elect among four methods of determining the twelve-month period in which the twelve weeks of entitled leave occurs, see 29 C.F.R. § 825.200, and because the City never officially elected which method of calculation it would use, plaintiff "merely had to establish her eligibility and leave should have been granted." (Pl.'s Mem. Opp. at 7.)
Plaintiff's assertion that another employee was allowed to use FMLA leave to obtain child care need not be considered because plaintiff has offered no evidentiary support for it. Moreover, the argument is meritless because the FMLA provides substantive rights which prescribe conduct by employers and entitlements for employees. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir.1998). As such, the relevant issue in a FMLA case concerning denial of substantive benefits is not how other employees are treated, but whether the employee has a right to the entitlement and whether the employer has provided it. Id.; see also Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 713 (7th Cir.1997) (noting that substantive claims under the FMLA are resolved "by asking whether the plaintiff has established ... that he is entitled to the benefit he claims.").
Plaintiff's second argument, concerning the method of determining the twelve-month period in which the twelve weeks of entitled leave occurs, is similarly unavailing. As discussed above, any failure of the defendants to comply with the FMLA's requirements does not create substantive rights in the plaintiff.
Defendants are correct that more than twelve months had passed since the birth of plaintiff's son when plaintiff requested leave to obtain child care for him in August 1996. Therefore, plaintiff was not entitled to further FMLA leave based on the birth of her child. See 29 U.S.C. § 2612(a)(2). Further, plaintiff does not allege that her son had a serious health condition, and so cannot contend she was entitled to leave under 29 U.S.C. § 2612(a)(1)(C). The FMLA's leave entitlement simply does not extend to obtaining *1093 child care. Defendants Forsting and the City's motion for summary judgment should therefore be granted on this aspect of plaintiff's claim.

4. Termination Claim.

Finally, defendants move for summary judgment on plaintiff's FMLA wrongful termination claim. Defendants state that to establish a prima facie case of wrongful termination under the FMLA, plaintiff must prove that (i) she is protected under the FMLA, (ii) she suffered an adverse employment decision, and (iii) either plaintiff was treated less favorably than an employee who had not requested leave under the FMLA, or an adverse decision was made because of plaintiff's request for leave. Defendants cite Oswalt v. Sara Lee Corp., 889 F.Supp. 253, 259 (N.D.Miss.1995), aff'd, 74 F.3d 91 (5th Cir.1996). Defendants argue they are entitled to judgment because plaintiff has not established any facts showing that she was entitled to FMLA leave, and she was terminated for being absent without leave, because she did not return to work after having been warned that she must do so to avoid discipline, including possible termination.
Plaintiff agrees with defendants' statement of the prima facie case for wrongful termination under the FMLA, but contends she has established a prima facie case. Specifically, plaintiff asserts she has demonstrated that she was an eligible employee protected by the FMLA, her termination is an adverse employment decision, and the proximity in time between her request for FMLA leave and the termination establishes the causal connection necessary for the third element of the prima facie case. Plaintiff points to defendant Forsting's September 18, 1996 demand that she produce documentation to substantiate her medical condition or return to work, which she contends relates back to her FMLA request and the defendants' misapprehension of their burden to request medical certification. Plaintiff relies on cases decided under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., for the proposition that "temporal proximity has supplied the causal connection as a matter of law in retaliatory discharge cases." (Pl.'s Mem. Opp. at 8.)
In addition to creating that substantive entitlements listed supra, the FMLA provides protection in the event an employee is discriminated against for exercising rights under its statutory scheme. See 29 U.S.C. § 2615(a)(1), (2); 29 C.F.R. § 825.220 (1997). These additional protections have been termed the "proscriptive" portion of the FMLA. Hodgens, 144 F.3d 151, 159.
The Eighth Circuit has not yet addressed how district courts are to analyze discriminatory discharge claims under the proscriptive portion the FMLA, and the parties do not address the issue of the appropriate analysis. Several circuit courts have employed the familiar analytical framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to claims that an employee was discriminated against for seeking or using FMLA-protected rights. See Hodgens, 144 F.3d 151, 159; Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 712-13 (7th Cir.1997); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997). The Court is persuaded this analysis is appropriate, and will apply it to plaintiff's FMLA wrongful termination claim.
The Eighth Circuit has instructed that under the three-part McDonnell Douglas analysis,
A [FMLA] plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. Only upon this prima facie showing does the burden of production shift to the employer to articulate some legitimate, nondiscriminatory reason for the employment action at issue. If the employer carries this burden of production, the burden shifts back to the employee to demonstrate that the proffered reason is mere pretext for discrimination.
Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir.1997) (applying McDonnell Douglas analysis in Title VII case).
When the prima facie case has been successfully rebutted, the presumption of discrimination disappears. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir.1996) (age discrimination case). *1094 The burden then shifts back to the plaintiff to present evidence sufficient to support two findings. First, the plaintiff must present evidence which creates a fact issue as to whether the employer's proffered reasons are mere pretext. Second, she must present evidence which creates a reasonable inference that the adverse employment decision was taken against her for having sought protected FMLA leave. See McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir.1998) (holding in a Title VII race discrimination case that a plaintiff must present evidence which creates a reasonable inference that the adverse employment decision was an act of intentional racial discrimination).

A.
The first step in the analysis is to determine whether plaintiff has established a prima facie case. There is no dispute that plaintiff's termination is an adverse action, but defendants dispute the first and third elements of plaintiff's prima facie case.
As stated above, defendants contend that plaintiff cannot establish the first element, that she was entitled to protection under the FMLA.[5] The Court has previously determined that genuine issues of fact remain concerning whether plaintiff had a serious health condition, and therefore issues remain as to whether she was protected under the FMLA, or alternatively, that she availed herself of a protected right under the FMLA.
Defendants also contend plaintiff cannot establish the third element, that the adverse action was taken because she requested FMLA leave, because her termination was in fact based on her refusal to return to work after a lengthy absence. It is uncontroverted that defendants were aware that plaintiff believed she was physically unable to return to regular duty, and that defendant Forsting sent her a letter on September 18, 1996, following her FMLA request for leave on August 1, 1996, warning her to return to duty or face discipline.
The burden of establishing a prima facie case is not onerous. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Therefore, for purposes of the instant summary judgment motion only, where all inferences are drawn in plaintiff's favor, and in light of the relatively low threshold showing necessary to establish a prima facie case, the Court concludes that plaintiff has satisfied her burden as to the third, causal connection element of the prima facie case.

B.
The Court now turns to the remaining portions of the three-part analysis: whether defendants articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and if so, whether plaintiff has presented evidence which creates a fact issue as to whether the proffered reason is a mere pretext, and which creates a reasonable inference that the adverse employment decision was taken against her for having sought protected FMLA leave. The Court concludes that plaintiff has failed to demonstrate that a reasonable trier of fact could find that her termination was based on her request for FMLA leave.
Defendants have articulated a legitimate nondiscriminatory reason for terminating plaintiff, specifically, that after having worked on light duty from June 1996 through early August 1996, plaintiff did not appear for work and was absent without leave between August 5, 1996 and September 18, 1996, and did not appear for work on September 19, 1996 after having been warned that her failure to do so could result in termination of her employment. Defendants cite the testimony of defendant Forsting, who testified that when he personally delivered the warning letter to plaintiff on September 18, 1996, he talked with plaintiff about her need to either return to work or produce documentation of her medical condition. (Forsting Dep. at 36-37, 41-43.) *1095 Forsting also testified that had plaintiff returned to work on September 19, 1996 she would have received oral and written reprimands for failing to abide by applicable sick leave policies. (Id. at 39-40.)
A defendant's burden to articulate a legitimate, nondiscriminatory reason for its actions is one of production and not of proof. "The defendant need not persuade the court, it must simply provide evidence sufficient to sustain a judgment in its favor." Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir.1995) (citing St. Mary's Honor Center v. Hicks, 509 U.S. at 507, 113 S.Ct. 2742). The Court finds the defendants have met their burden of production in this case.

C.
Because the prima facie case has been successfully rebutted, the presumption of discrimination disappears. Hicks, 509 U.S. at 510-11, 113 S.Ct. 2742; Rothmeier, 85 F.3d at 1334. The burden shifts back to plaintiff to present evidence sufficient to support two findings. First, plaintiff must present evidence which creates a fact issue as to whether the defendants' proffered reasons are mere pretext. Second, she must present evidence which creates a reasonable inference that the adverse employment decision was taken against her for having sought protected FMLA leave. See McCullough v. Real Foods, Inc., 140 F.3d at 1127.
In her memorandum in opposition to the motion for summary judgment, plaintiff addresses only the issue whether she has established a prima facie case, and does not offer evidence specifically directed to the issue of pretext. Viewing the record in the light most favorable to plaintiff, and granting her all favorable inferences which may be drawn therefrom, plaintiff's evidence of pretext consists of the following: (i) the temporal proximity between her request for FMLA leave on August 1, 1996 and her termination forty-nine days later on September 19, 1996; and (ii) the defendants failed to comply with the FMLA's notice requirements, relied on the opinion of their own doctor that plaintiff could return to work when they should have asked plaintiff to obtain a medical certification of her condition, and erroneously interpreted 29 C.F.R. § 825.200 concerning the twelve-month period in which plaintiff was entitled to take twelve weeks of leave.
The Court need not decide whether this evidence is sufficient to create a fact issue with respect to whether the defendants' proffered reason is legitimate, because plaintiff has presented no evidence which could support the reasonable inference that the adverse employment decision was taken against her for having sought protected FMLA leave. See Ryther v. KARE 11, 108 F.3d 832, 836-38 (8th Cir.) (en banc) (stating that while a plaintiff may rely on the same evidence to prove both pretext and intentional discrimination, the evidence must be sufficient to prove the employer is guilty of intentional discrimination), cert. denied, ___ U.S. ___, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997). A court may decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer unlawful discrimination, even if plaintiff has presented some evidence of pretext. Ryther, 108 F.3d at 848, n. 13 (Part IA of opinion of Loken, J., joined by eight active judges); Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1073 (8th Cir.1998) (quoting Rothmeier, 85 F.3d at 1335), petition for cert. filed, 66 U.S.L.W. 3790 (June 3, 1998).
In this case, plaintiff has not presented evidence sufficient for a jury to infer that the defendants terminated her from employment because of her attempt to avail herself of rights under the FMLA. The Court therefore concludes defendants' motion for summary judgment should be granted on plaintiff's claim of wrongful termination under the FMLA.

III. Conclusion

For the foregoing reasons, the Court concludes that defendants Forsting and the City of Berkeley's motion to dismiss for lack of subject matter jurisdiction should be denied, and their motion for summary judgment should be granted in part and denied in part as set forth above.
Accordingly,
IT IS HEREBY ORDERED that defendants Forsting and City of Berkeley's motion to dismiss is DENIED. [Doc. 35].
*1096 IT IS FURTHER ORDERED that defendants Forsting and City of Berkeley's amended motion for summary judgment is GRANTED in part and DENIED in part; said motion is GRANTED as to plaintiff's claims based on entitlement to FMLA leave to care for her grandmother and to obtain child care for her son, and for wrongful termination in violation of the FMLA; said motion is DENIED as to plaintiff's claims based on entitlement to FMLA leave for her serious health condition. [Doc. 41].
An appropriate partial judgment shall accompany this memorandum and order.

PARTIAL JUDGMENT
In accordance with the memorandum and order of this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendants Forsting and the City of Berkeley, Missouri, and against plaintiff, on the claims in her First Amended Complaint under the Family and Medical Leave Act ("FMLA") for entitlement to FMLA leave to care for her grandmother and to obtain child care for her son, and for wrongful termination in violation of the FMLA.
NOTES
[1] Defendant Richardson is presently in default, as he was served with process but has not filed a responsive pleading within the time allowed. Plaintiff has not sought a clerk's entry of default under Federal Rule of Civil Procedure 55(a), a necessary prerequisite to any default judgment under Rule 55(b).
[2] The Court notes the letter denying plaintiff's request for FMLA leave did not mention her lack of a serious health condition as a reason for denial of leave.
[3] Under the FMLA, a "serious health condition" is any physical or mental condition that involves inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11); see Martyszenko v. Safeway, Inc., 120 F.3d 120, 122 (8th Cir.1997). This case does not involve allegations of inpatient care. "The FMLA does not define what medical attention constitutes `continuing treatment' by a health care provider, nor does it further define `serious health condition.'" Id. Under the regulations, to constitute a serious health condition premised on continuing treatment by a health care provider:

[T]he condition at minimum will include either: a period of incapacity of more than three consecutive days together with subsequent multiple treatments or related periods of incapacity; ... a period of incapacity or treatment for the incapacity due to a chronic serious health condition; a permanent or long-term period of incapacity due to ineffective treatment; or a period of absence to receive or recover from multiple treatments by a health care provider for restorative surgery or for a condition likely to result in incapacity if no treatment is received. 29 C.F.R. § 825.114(a).
Martyszenko, 120 F.3d at 122. The Eighth Circuit has indicated that incapacity is required to trigger the FMLA. Id. at 122-23; but see Thorson v. Gemini, Inc., 123 F.3d 1140, 1141 (8th Cir. 1997) (remanding for further consideration whether plaintiff's ulcer and hiatal hernia, which caused her to miss work for more than three consecutive days and required continuing treatment, met the regulatory criteria for a "serious health condition"). Further, an employee's serious health condition must make her "unable to perform the functions" of her position. See 29 U.S.C. § 2612(a)(2). "For purposes of the FMLA, the essential functions of the employee's position are to be determined with reference to the position the employee held at the time notice is given or leave commenced, whichever is earlier." 29 C.F.R. § 825.115.
[4] Defendants incorrectly cite to 29 U.S.C. § 2612(b).
[5] The Court notes that other decisions have established a slightly different first element of the FMLA prima facie case, specifically that a plaintiff show she availed herself of a protected right under the FMLA. See, e.g., Hodgens v. General Dynamics Corp., 144 F.3d 151, 161; Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir.1997); Morgan v. Hilti, 108 F.3d at 1325. This difference does not appear to materially affect the analysis in this case, and therefore the Court will use the prima facie case elements suggested by the parties.